FILED'09 JUN 03 15:40USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SCOTT DAHLEN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF BEND, a municipal corporation,<br><br>　　　　Defendant. | Civ. No. 06-1122-TC<br><br>ORDER |

Aiken, Chief Judge:

　　Plaintiff filed suit claiming that defendant City of Bend (the City) violated his rights to equal protection and procedural due process by denying several land use applications for two parcels of property. Amended Complaint, ¶¶ 6, 9. Both parties filed motions for partial summary judgment on plaintiff's equal protection claim with respect to property identified as Tax Lot 100.

　　On February 27, 2009, Magistrate Judge Coffin issued his Findings and Recommendation, finding that plaintiff's equal

1　- OPINION AND ORDER

protection claim was not ripe for review and recommending dismissal. Magistrate Judge Coffin found the claim unripe because plaintiff has not submitted a building permit since the Oregon Land Use Board of Appeals (LUBA) ruled that Tax Lot 100 was not a dedicated landscape buffer. Accordingly, Magistrate Judge Coffin recommends that plaintiff's Motion for Partial Summary Judgment be denied and defendant's Motion for Partial Summary Judgment be converted to a motion to dismiss and granted. The matter is now before me. See 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. See 28 U.S.C. § 636(b)(1); McDonnell Douglas Corp. v. Commodore Business Machines, Inc., 656 F.2d 1309, 1313 (9th Cir. 1981). Plaintiff filed timely objections to the Findings and Recommendation and requested oral argument. Thus, I have given *de novo* review of Magistrate Judge Coffin's ruling. I deny the request for oral argument, adopt Magistrate Judge Coffin's Findings and Recommendation in part, grant defendant's Motion for Partial Summary Judgment and deny plaintiff's Motion for Partial Summary Judgment.

## BACKGROUND

In 2003, plaintiff purchased Tax Lot 100, a narrow, undeveloped 1.92-acre lot along the east side of Mt. Washington

Drive in Bend, Oregon. Tax Lot 100 is adjacent to the Broken Top Planned Unit Development (PUD).

On August 5, 2004, after plaintiff began removing trees on Tax Lot 100, the City issued a cease and desist letter asserting that Tax Lot 100 1) was not a legal lot of record, and 2) could not be developed because it was designated as an open space landscape buffer.

Plaintiff subsequently initiated a legal lot determination process. On June 7, 2006, the City of Bend Hearings Officer issued a decision finding that Tax Lot 100 is a legal lot of record as a "remainder parcel." Plaintiff's Ex. 9, pp. 12-13. The Hearings Officer declined to address whether Tax Lot 100 could be developed, finding that such "question must be resolved in another land use proceeding such as an application for subdivision plat approval or for another land use permit." Plaintiff's Ex. 9, p. 14.

On August 4, 2006, plaintiff filed this action.

In 2007, plaintiff submitted an application for a building permit to construct a single-family residence on Tax Lot 100. Plaintiff's Ex. 12, p. 3. City planning officials still believed Tax Lot 100 was a dedicated landscape buffer but could not determine with certainty whether the property could be developed. Therefore, City planners returned plaintiff's application and requested a declaratory ruling to determine whether and to what extent Tax Lot 100 may be developed for uses other than a landscape

3   - OPINION AND ORDER

buffer. Plaintiff's Ex. 11, p. 1. In their recommendation to the Hearings Officer, City planners asserted that the 1991 Broken Top PUD approval and 1992 master plan, along with a 1991 comprehensive master plan amendment and ordinance approving the relocation of Mt. Washington Drive, reserved Tax Lot 100 as a dedicated landscape buffer.

On August 8, 2007, after conducting hearings in which plaintiff participated, the Hearings Officer issued a decision finding that the 1991 Broken Top PUD approval and the Mt. Washington Drive plan amendment implicitly reserved Tax Lot 100 as a landscaped buffer, thus precluding development of the property. Plaintiff appealed the decision to the City Council, which declined to hear the appeal. Plaintiff then appealed the decision to the Oregon Land Use Board of Appeals (LUBA).

While plaintiff's LUBA appeal was pending, the parties' filed cross-motions for summary judgment on plaintiff's equal protection claim with respect to Tax Lot 100. Magistrate Judge Coffin stayed the motions until LUBA issued its ruling.

On November 21, 2008, LUBA issued a decision reversing the decision of the Hearings Officer. LUBA explained that while "the approved 1991 PUD master plan explicitly identified the strip east of Mt. Washington Drive as a 'buffer,'" the 1992 PUD master plan and approval did not designate Tax Lot 100 as a landscape buffer, and such designation could not be inferred by adoption of the Mt.

4    - OPINION AND ORDER

Washington Drive comprehensive plan amendment. <u>Dahlen v. City of Bend</u>, 2008 WL 5121631 (Or. LUBA Nov. 21, 2008).

After LUBA's decision, Magistrate Judge Coffin lifted the stay, considered supplemental briefing by the parties and heard oral argument before issuing his Findings and Recommendation.

## DISCUSSION

To support his equal protection claim, plaintiff relies upon the "class-of-one" theory. Under this theory, a plaintiff does not claim to be a member of a specific class that the defendant discriminates against but rather argues that the defendant arbitrarily and without rational basis treated the plaintiff worse than others similarly situated. See <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562 (2000) (per curiam).

Magistrate Judge Coffin found that plaintiff's equal protection claim was not ripe for review, because plaintiff had not sought and been denied a permit to develop Tax Lot 100. Magistrate Judge Coffin noted that after LUBA's reversal of the Hearings Officer's decision, "plaintiff was free to apply for a permit to develop in light of that reversal" and had not done so. Findings and Recommendation, p. 5. Therefore, Magistrate Judge Coffin found that subject matter jurisdiction was lacking and recommended dismissal of this claim.

Plaintiff objects to the Findings and Recommendation. Plaintiff argues that unlike a regulatory takings claim, an equal

5   - OPINION AND ORDER

protection claim does not require him to exhaust all state remedies or obtain a final ruling from the City. Rather, plaintiff maintains that he simply must establish differential treatment by the City with no rational basis.

I agree with Magistrate Judge Coffin that plaintiff's claim for damages arising from the denial of an application to develop Tax Lot 100, as alleged in plaintiff's complaint, is not ripe for review. Although plaintiff sought a building permit in 2007, the City did not deny the permit; rather, it returned plaintiff's application and sought a declaratory ruling to determine whether Tax Lot 100 could be developed. As noted by Magistrate Judge Coffin, plaintiff has not renewed his application for a building permit since LUBA rendered its decision.

However, plaintiff also alleges that the City violated his equal protection rights when it issued a cease and desist letter in 2005 and refused to accept his application for a building permit in 2007.[1] Challenges to government actions that allegedly cause "'concrete injuries which are separate from any taking'" and "'have already occurred and do not depend on the finality of the County's determination of the permissible uses'" of the property are "'not

---

[1] Plaintiff also cites the Hearings Officer's decision and the City's actions regarding Tax Lot 6900 as violations of his equal protection rights. See Objections, p. 5. However, plaintiff presents no evidence or argument that the Hearings Officer is a City of Bend official, and the parties' instant motions are limited to the City's treatment of Tax Lot 100.

6    - OPINION AND ORDER

subject to the ripeness constraints applicable to regulatory takings.'" Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 830-31 (9th Cir. 2003) (quoting Harris v. County of Riverside, 904 F.2d 497, 501 (9th Cir. 1990)) (emphasis omitted). Thus, plaintiff arguably alleges damages that do not depend on a final permitting decision from the City. To this extent, plaintiff's equal protection claim is ripe for review.

Nonetheless, the City argues that plaintiff's claim fails as a matter of law. As emphasized by the City, to survive summary judgment plaintiff must present evidence that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 528 U.S. at 562.[2] Significantly, "[t]he Olech class of one suit serves an important but relatively narrow function. It is not a vehicle for federalizing run-of-the-mine zoning, environmental, and licensing decisions." Cordi-Allen v. Conlon, 494 F.3d 245, 255 (1st Cir. 2007).

To ensure that federal courts do not become de facto land use

---

[2]The City also argues that plaintiff's § 1983 claim against it must fail, because plaintiff does not identify a City policy or final decision by a policymaker that caused the alleged constitutional deprivation. Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978). Rather, the land use decisions at issue were made by City employees, i.e, City planners, and the City cannot be held liable for their actions. Hopper v. City of Pasco, 241 F.3d 1067, 1082-83 (9th Cir. 2001). Although this argument is persuasive, I nonetheless address the merits of plaintiff's equal protection claim.

7   - OPINION AND ORDER

decision-makers, a class-of-one plaintiff bears a high burden to prove similarity with those treated differently. "The 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" Cordi-Allen, 494 F.3d at 251 (quoting Olech, 528 U.S. at 565 (Breyer, J., concurring)). Indeed,

> when the class consists of one person or entity, it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable. Accordingly, courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases.

Jicarilla Apache Nation v. Rio Arriba County, 440 F.3d 1202, 1213 (10th Cir. 2006) (citing Neilson v. D'Angelis, 409 F.3d 100, 104-05 (2d Cir. 2005); Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir. 2004); McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004); Purze v. Vill. of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)). Otherwise, "virtually every zoning decision . . . would be a candidate to find its way to federal court in the guise of an equal protection claim." Cordi-Allen, 494 F.3d at 251.

It is therefore incumbent upon plaintiff to go beyond the allegations of his complaint and present evidence showing a genuine issue of material fact as to whether the City treated him differently than property owners similar in all material respects. "The burden that a class of one plaintiff must carry at the summary

8   - OPINION AND ORDER

judgment stage is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks." Cordi-Allen, 494 F.3d at 252; see also Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) (noting that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves"); Thornton v. City of St. Helens, 425 F.3d 1158, 1167-68 (9th Cir. 2005); Purze, 286 F.3d at 455 (requiring class-of-one plaintiff to demonstrate that she was treated differently than someone who is "prima facie identical in all relevant respects"). Plaintiff fails to meet this burden.

To establish similarity, plaintiff relies on Exhibits 2 and 3, a chart and diagram (presumably created by plaintiff or counsel) identifying twenty-nine parcels of property that allegedly encroach on portions of the landscape buffer designated by the 1991 Broken Top PUD approval. Aside from the fact that Exhibits 2 and 3 are unauthenticated and lack foundation, "[i]t is inadequate merely to point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated." Cordi-Allen, 494 F.3d at 251. Other than the location of their properties, plaintiff presents no evidence that these property owners are similar to plaintiff "in all material respects" and were allowed to build within the landscape buffer. Defendant's Exs. 505-06.

9    - OPINION AND ORDER

In fact, the parcels identified by plaintiff were platted and approved as part of the Skyline Summit PUD, which includes several designated open spaces that essentially maintain the integrity of the landscape buffer designated by the 1991 Broken Top PUD approval. Plaintiff's Exs. 2, 3 (lots identified as Tracts Q, M, C, T, and U); Defendant's Exs. 509-10. In contrast, it is undisputed that Tax Lot 100 is a "remainder parcel" that was not platted and approved as part of a PUD, and plaintiff did not seek to develop it as such. Therefore, plaintiff fails to a show that he was similarly situated in all material respects to others who sought to build homes on land the City deemed a landscape buffer.

Even if plaintiff could establish a genuine issue of material fact as to similarity, he cannot show that the City's actions were arbitrary or without rational basis. A cursory review of the submitted documents reveals the confusion and contradiction surrounding the continued designation of Tax Lot 100 as a natural landscape buffer. Defendant's Ex. 501, pp. 15-27, 28-32, 89, 94, 256-59; Ex. 502, pp. 1-3; Ex. 504, p. 9. At the time he purchased the property, plaintiff knew that development of Tax Lot 100 might be prohibited based on its designation as a dedicated landscape buffer. Defendant's Exs. 502, pp. 1-3. After plaintiff reached a different conclusion and sought to develop the property, neighboring landowners objected on the basis that Tax Lot 100 was intended as a natural landscape buffer as a condition of Mt.

10   - OPINION AND ORDER

Washington Drive's realignment. Defendant's Ex. 501, pp. 29-33, 53-56, 57-65, 141-51. Furthermore, the Hearings Officer found that the 1991 Broken Top PUD approval and Mt. Washington Drive plan amendment created and preserved the landscape buffer designation. Plaintiff's Ex. 12; Defendant's Ex. 501, pp. 15-27. These undisputed facts thus negate plaintiff's argument that the City's actions were arbitrary or wholly irrational.

Plaintiff nonetheless points to LUBA's reversal of the Hearings Officer's decision as support that the City's actions were legally incorrect and without rational basis. However, this court's role is limited to determining whether the City's actions were reasonable; it is not the role of this court to delve into the legal nuances and factual correctness of complicated land use decisions. RUI One Corp. v. City of Berkeley, 371 F.3d 1137, 1156 (9th Cir. 2004) (noting that the "equal protection, rational-basis inquiry is a very lenient one")  "Were the law otherwise, the federal court would be transmogrified into a supercharged version of a local zoning board - a zoning board on steroids, as it were." Cordi-Allen, 494 F.3d at 252; see also Jicarillo Apache Nation, 440 F.3d at 1209 ("An approach that reads *Olech* too broadly could transform the federal courts into general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal

system.") (citation and quotation marks omitted).

Finally, plaintiff presents no evidence that the City's actions were pretextual or motivated by animus or malice. Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 946-48 (9th Cir. 2004). Accordingly, plaintiff's equal protection claim with respect to Tax Lot 100 fails as a matter of law.

## CONCLUSION

For the reasons explained above, it is HEREBY ORDERED that Magistrate Judge Coffin's Findings and Recommendation (doc. 141) filed February 27, 2009 is ADOPTED, in part. To the extent plaintiff alleges harm resulting from the City's issuance of a cease and desist letter and refusal of his 2007 building permit application, plaintiff fails to establish a genuine issue of material fact that he was treated differently from others similarly situated or that the City's actions were without rational basis. Accordingly, defendant's Motion for Partial Summary Judgment (doc. 45) is GRANTED, and plaintiff's Motion for Partial Summary Judgment (doc. 20) is DENIED.

IT IS SO ORDERED.

Dated this 3 day of June, 2009.

/s/ Ann Aiken
Ann Aiken
United States Chief District Judge

12    - OPINION AND ORDER